IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSELL J. BRYANT, d/b/a Russ Bryant Photographer, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 05 C 3066 |
| JAMES A. GORDON, MACH 1, LLC, and JOHN URTIS, ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Photographer Russell Bryant, who does business as Russ Bryant Photographer, brought this action against James Gordon, Mach 1, LLC, and John Urtis. Bryant sues for copyright infringement and Lanham Act violations under federal law, and also asserts state law claims of consumer fraud, deceptive trade practices, and common law unfair competition. Mach 1, LLC and Gordon have moved for summary judgment on the infringement claim; defendant Urtis has separately moved for summary judgment on that claim. Bryant has filed a cross-motion for summary judgment as to defendant Urtis on the infringement claim. For the following reasons, the Court grants Mach 1, LLC and Gordon's motion in part and denies it in part. The Court denies Urtis' and Bryant's motions for summary judgment.

**Facts**

Bryant is a professional photographer and former Army Ranger. He claims to hold a valid copyright in a photograph he created that depicts an Army Ranger sniper team (the "Bryant

1

photo"). In June 1996, Bryant was invited to photograph an Army Ranger simulated combat demonstration at the Hunter Army Airfield in Savannah, Georgia. The event Bryant photographed was a demonstration of various combat operations, including an actual sniper team outfitted in Ghillie suits.[1] The Army Rangers organized the demonstration for an audience of approximately 100 Vietnam veterans who were former members of the 101st Airborne Division.

In preparation for the combat demonstration photo shoot, Bryant had access to the sniper team that would become the central figures in the Bryant photo. Bryant obtained permission to photograph the sniper team, which was part of the Special Operations Command, 1st Ranger Battalion. The sniper team was an actual combat unit team, not part of the training school. The sniper team Bryant photographed was positioned at the edge of a runway, and each member had prepared his own Ghillie suit consistent with the local vegetation growing at the edge of the airfield. The sniper team members used their own weapons, gear, and camouflage technique. Bryant created various photographs of the sniper team using his own camera equipment, including a selection of cameras, lenses, filters, and a light meter. Though Bryant did not pose the sniper team, he selected the subjects, the positioning between himself and the subjects, framed the images in his viewfinder, and controlled the shutter speed and aperture settings based on the light at the airfield that day.

In 1996, Bryant contacted Mach 1, Inc., a seller of "military motivational merchandise"

---

[1] A Ghillie suit is a camouflage outfit that is often customized with local foliage to blend in with the terrain. Snipers and hunters use a Ghillie suit for camouflage purposes. The Ghillie suit was originally developed by Scottish gamekeepers as a portable hunting blind. The name derives from ghillie, the Scots Gaelic term for "boy," and is often used to refer to servants assisting in hunting or fishing expeditions. High quality Ghillie suits can be purchased online, but traditionally in the elite sniper subculture, soldiers in the armed forces construct their own unique Ghillie suits. *See* Pl. Exs. J & K.

based in Chico, California, and submitted several of his photographs for the company's consideration, including an additional photo in dispute depicting high altitude, low opening (HALO) parachutists jumping out of an airplane. In 1997, Daniel Salcedo, the creative director of Mach 1, Inc., selected the Bryant photo to be included in a coffee table book entitled *Eagle Eyes*. The Bryant photo was the first photograph in the book, which also included works by other photographers, including John Urtis.

The Bryant photo was reprinted numerous times by Mach 1, Inc. under the direction of Salcedo. Mach 1, Inc. used the Bryant photo in at least one book, a calendar, and various other items of merchandise, such as posters and t-shirts. Mach 1, Inc. also inserted the Bryant photo into a motivational poster entitled "Patience." In the Patience layout, the Bryant photo was placed in the center of a black background with a white border. Beneath the Bryant photo, Salcedo inserted the phrase "Patience –If you have but one shot at an opportunity, make it count."

In January 2001, Mach 1, Inc. filed for bankruptcy. Shortly thereafter, Bryant, through his attorney Michael Thomerson at McCaller & Associates, filed a proof of claim for $5,150. In late 2001, James Gordon learned that the assets of Mach 1, Inc. would be auctioned for sale. Gordon planned on purchasing the assets, and in anticipation of the purchase, he registered Mach 1, LLC as an Indiana limited liability corporation in December 2001. Defendant Mach 1, LLC sells, among other things, military motivational merchandise.

Gordon purchased Mach 1, LLC's assets in January 2002. The assets he purchased included, among other things, office equipment, computers, 200,000 pre-printed merchandise catalogues, t-shirts, posters, coffee mugs, and books. Mach 1, LLC began to sell on its website,

www.mach1.com, the merchandise it purchased from the Mach 1, Inc. bankruptcy asset sale, including the Patience motivational poster bearing the Bryant photo.

In the spring of 2003, Mach 1, LLC began running low on its stock of merchandise bearing the Patience layout. Gordon contacted Salcedo, who was then working at Lodestar, Inc., a stock photography company in California, to purchase the right to reproduce and sell a series of five sniper photographs that Gordon planned to use in several layouts with motivational quotes beneath the photographs. Gordon hoped to purchase a sniper photo to replace Bryant's photo in the Patience layout. Salcedo eventually provided Gordon with a picture taken by Urtis that showed a sniper team in Ghillie suits. The record indicates that the Urtis photo was not yet in existence when Gordon first contacted Salcedo. *See* Urtis Mot. at 5-7, 17-18. The record is unclear as to when Salcedo actually provided the photos to Gordon. Mach 1, LLC purchased the right to create 1000 prints of the Patience layout with the Urtis photo in three different sizes (13 x 20, 8 x 10, and 5 x 7).

Bryant's second amended complaint focuses on two categories of allegedly infringing merchandise: items containing the Patience layout with the Bryant photo and the HALO photo that were purchased in the Mach 1, Inc. bankruptcy asset sale and then resold by Mach 1, LLC, and items containing the Patience layout with the Urtis photo. Mach 1, LLC and Gordon have moved for summary judgment, arguing that Bryant is precluded from bringing an infringement claim because they purchased the assets of Mach 1, Inc. in bankruptcy without objection by Bryant, who had notice of the sale. Mach 1, LLC and Gordon also contend that they did not commit copyright infringement because the protectible elements of Bryant's photo are not substantially similar to the Urtis photo. In his separate motion for summary judgment, Urtis

4

argues that he did not infringe Bryant's copyright but rather used only the underlying idea of a sniper team in a prone position, which he contends cannot be copyrighted. Bryant has cross-moved for summary judgment against Urtis.

**Discussion**

Summary judgment is appropriate when the pleadings, depositions, and other materials in the record show that there is no disputed issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

1.  **Effect of Mach 1, Inc. asset sale**

Gordon and Mach 1, LLC argue that Bryant's claim is precluded, in part, by the bankruptcy court order approving the sale of Mach 1, Inc.'s assets and the later sale of those assets.

On November 5, 2001, Mach 1, Inc.'s bankruptcy trustee filed, and served on all creditors and parties in interest (including Bryant), a motion seeking authority to sell certain property of Mach 1, Inc.'s bankruptcy estate. The motion stated that the trustee was seeking permission to sell, free and clear of liens, encumbrances, and claims of interest, "[a]ll of Mach 1's Inventory, Furniture, Fixtures, Equipment, Accounts Receivable, Trademarks, Copyrights,

5

UTB Credits, Customer Lists, Phone Numbers, and Goodwill." Urtis Ex. K. Bryant interposed no objection to the motion. On December 11, 2001, the bankruptcy court granted the motion and entered an order authorizing the trustee to sell that same property, "free and clear of liens, encumbrances and claims of interest, including without limitation the claims of photographers and/or artists whose originals were reproduced in connection with the image based portion of the debtor's inventory" – including Bryant (whose claim was listed under the name of his attorney, McCaller & Associates). Gordon Ex. 10.

The asset sale took place on December 13, 2001. As noted earlier, Mach 1, LLC, through Gordon, purchased the assets sold. The bill of sale provided to Mach 1, LLC by the bankruptcy trustee stated that the trustee was conveying "[a]ll interests of Seller in inventory, furniture, fixtures, equipment, accounts receivable, trademarks, copyrights, UTB creditors, customers [sic] lists, phone numbers and Goodwill and other fixed assets of seller," and "[a]ll of Seller's tangible and intangible personal property of any kind . . . ." Gordon Ex. 11. This included the Mach 1, Inc. website (www.mach1.com) and the computer equipment in which the material on the website was stored, as well as 200,000 catalogs in which the Bryant images were displayed.

Gordon and Mach 1, LLC argue that they cannot be held liable for copyright infringement with regard to their sale of the merchandise that they purchased from the Mach 1, Inc. bankruptcy sale or their display of the Bryant images over the Internet on the Mach 1, LLC website. They contend that Bryant cannot complain of their sale of the merchandise and images they purchased at the Mach 1, Inc. asset sale because he was given notice of the sale and interposed no objection. They also argue that their purchase at the sale of Mach 1, Inc.'s website and the computers containing the images posted on the website gave them the right to continue

to display the Bryant images on Mach 1, LLC's website, as Mach 1, Inc. had done prior to the bankruptcy sale.

Bryant concedes that in the asset sale, Gordon and Mach 1, LLC obtained title to the existing merchandise bearing the Bryant images and the right to resell that merchandise. *See* Pl. Resp. at 11. For this reason, Gordon and Mach 1, LLC are entitled to summary judgment on Bryant's claim to the extent it relates to the sale of the merchandise that Gordon acquired via the Mach 1, Inc. asset sale.

Beyond that, the parties dispute exactly what rights that Gordon and Mach 1, LLC acquired. As noted above, Gordon and Mach 1, LLC argue that their acquisition via the bankruptcy sale of the Mach 1, Inc. website and the computer equipment storing the images there displayed, including the Bryant images, entitled them to display the Bryant images on the Mach 1, LLC website after the sale. Bryant concedes that Gordon and Mach 1, LLC acquired the limited rights of display conferred under the "first sale" doctrine endorsed in 17 U.S.C. § 109(a)[2] but argues that this did not include the right to display his images on Mach 1, LLC's website.

The parties have told the Court precious little about the nature of the display of the images on the Mach 1, LLC website. Specifically, the Court has no idea, on the record presented, whether Mach 1, LLC was displaying the Bryant images only to sell the merchandise bearing those images that it had acquired in the Mach 1, Inc. asset sale, or for some other

---

[2] The Supreme Court originally endorsed the first sale doctrine in 1908, with a claim brought by a publisher who argued that the resale of its books at lower prices infringed upon its copyright in the books. *Bobbs-Merrill Co. v. Straus*, 210 U.S. 339 (1908). Essentially, the first sale doctrine permits the initial copyright purchaser to transfer (sell or give away) the protected copy of the work without the permission of the copyright owner. *See Quality King Distrib., Inc. v. L'Anza Research Int'l*, 523 U.S. 135, 140-43 (1998); 17 U.S.C. § 109(a).

purpose. The scope and nature of the display makes a difference. Under 17 U.S.C. § 109(c),

> the owner of a particular copy lawfully made under this title, or any person authorized by such owner, is entitled, without authority of the copyright owner, to display that copy publicly, either directly or by the projection of no more than one image at a time, to viewers present at the place where the copy is located.

The "first sale" doctrine, as embodied in § 109(c), does not include the right to publicly display copyrighted images to the world via the Internet. *See Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 192 F. Supp. 2d 321, 334-35 (D.N.J. 2002). On the other hand, the rights of a copyright owner like Bryant "do[ ] not include any right to prevent the making, distribution, or display of pictures or photographs of such articles in connection with advertisements . . . related to the distribution or display of such articles . . . ." 17 U.S.C. §113(c).

Based on these provisions, were the evidence to establish that Gordon and Mach 1, LLC displayed the Bryant images on Mach 1, LLC's website only for the purpose of advertising for sale the merchandise with those images that they had purchased from the Mach 1, Inc. bankruptcy sale, then under §113(c), Bryant would be unable to sustain a claim based on that display. If, on the other hand, the defendants' display of Bryant's images on the website went beyond this limited purpose, the asset sale and the court order approving the sale would not bar his claim.

Once a bankruptcy court approves an asset sale, a claimant who had notice of the sale but did not object cannot effectively invalidate the sale by claiming he is the true owner of the assets sold. *ITOFCA, Inc. v. Megatrans Logistics, Inc.,* 322 F.3d 928, 930 (7th Cir. 2003). This rule is a branch of the doctrine of claim preclusion. *See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 907-08 (7th Cir. 1990) (cited in *ITOFCA,* 322 F.3d at 930). Because, however, claim preclusion is "not meant to be a trap for the unwary and members of the bar

ought to be able to advise their clients as to its applicability," the underlying judgment must be sufficiently specific to "ensure fair notice to litigants" before it can preclude a particular claim. *Andersen v. Chrysler Corp.,* 99 F.3d 846, 852 (7th Cir. 1996).

In *ITOFCA,* the Seventh Circuit barred a copyright infringement claim by a software developer on the ground that the alleged infringer had purchased in a bankruptcy sale the right to sell copies of the copyrighted software. The court relied on the language of the bankruptcy court order approving the sale, which specifically stated that the purchaser was free to sell additional copies. *ITOFCA,* 322 F.3d at 930-31.

No such language appears in the order authorizing the sale in this case. Specifically, in the documents that the defendants provided to the Court, there is no indication that the bankruptcy court was asked to authorize, or did authorize, the sale of the right to display images on a website. Indeed, the trustee's motion and the bankruptcy court's order made no mention of this sort of intangible right and gave no indication that the trustee was seeking to sell, or the court was authorizing the sale, of every right or asset that Mach 1, Inc. owned. Rather, the motion and order referred only to particular categories of assets. These included "copyrights," but there is no evidence that Mach 1, Inc. ever owned the copyrights to Bryant's photographs. The document that appears to constitute Bryant's agreement with Mach 1, Inc. clearly provided that he retained the copyrights to all his photographs, *see* Urtis Ex. A ¶ 6(j), and Gordon himself testified that he does not claim to own the copyrights to Bryant's photographs. *See* Pl. Ex. D (Gordon Dep. 107-10). In short, there is no indication that Bryant was ever on notice that the bankruptcy trustee was selling, or claiming the ability to sell, a purported right to display Bryant's images for whatever purpose the purchaser chose.

Because the party seeking summary judgment has the burden of showing the absence of a genuine issue of material fact, *see, e.g., Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007), Gordon and Mach 1, LLC are not entitled to summary judgment with regard to the aspect of Bryant's claim that concerns the display of his images on Mach 1, LLC's website.

**2.      Urtis' claim of bankruptcy fraud by Bryant**

In his separate motion for summary judgment, Urtis contends that Bryant's claim for royalties filed in the Mach 1, Inc. bankruptcy was fraudulent. It appears that Urtis is asking the Court to determine, as a matter of law, that Bryant is a liar and to reject his current claims on that basis. That is not something that the Court can appropriately determine on a motion for summary judgment. But even were Urtis able to prove that Bryant committed bankruptcy fraud, the Court does not see, and Urtis has not explained, how this would affect Bryant's legal right to sue Urtis for copyright infringement based on acts Urtis allegedly committed much later. In short, Urtis is not entitled to summary judgment on this basis. The Court does not address at this time whether and the extent to which Bryant's claimed fraud might be admissible at trial in this case.

**3.      Copyright infringement**

Gordon, Mach 1, LLC, and Urtis all argue that Bryant cannot prove the necessary elements for copyright infringement. To establish copyright infringement, a plaintiff must demonstrate "1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Susan Wakeen Doll Co. v. Ashton-Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001).

Defendants do not dispute Bryant's ownership of a valid copyright in his photograph. They maintain, however, that the copyright does not cover the photograph in its entirety, but rather only certain limited creative contributions that Bryant made. They argue that any similarities between the Bryant and Urtis photographs relate only to noncopyrightable subject matter.

    a.    **Copyrightability**

The issue of copyrightability, at least in this Circuit, is a question of law (albeit one that is fact-specific) to be determined by the court.[3] *See Gaiman v. McFarlane*, 360 F.3d 644, 648-49 (7th Cir. 2004); *Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *see also*, *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 n.5 (1st Cir. 2001) (cited with approval in *Gaiman*). A copyright protects only the expression of ideas, not the ideas themselves. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Courts have long held that the primary objective of the Copyright Act is the promotion of arts and sciences and that this objective "is accomplished by assur[ing] authors the right to their original expression, but also by encourag[ing] others to build freely upon the ideas and information conveyed by a work." *Wildlife Express*, 18 F.3d at 507 (internal quotations and citations omitted).

---

    [3] The Second and Ninth Circuits hold that "copyrightability is a mixed question of law and fact, at least when it depends (as it usually does) on originality." *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004) (citing *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 681 (2d Cir. 1998); *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1035 (9th Cir. 1992)).

Defendants contend that Bryant's claim is based on the two photos' depictions of a sniper team, an idea that defendants say can be expressed only in a limited number of ways. They argue that this is a case in which "copyright protection must be narrow to avoid granting an effective monopoly of the idea itself." *See* Gordon Mot. at 9. Specifically, defendants offer evidence that Bryant's photograph capturing a sniper and spotter in Ghillie suits in the prone position depicts positions and stances that are standard under military procedures. *See* Gordon Ex. A at 1-2; Urtis Mot. at 5-7. They also note that because Bryant had no input in the positioning, attire, and equipment shown in the photo and was given no choice as to the location, time of day, or time of year when the photograph would be taken, his photograph lacks the elements of originality necessary for copyrightability.

Photographs may be protected under copyright law based on the expression of the artist's originality, such as his choice of composition, lighting, shading, camera angle, background, perspective, selection of film and camera, and the expression elicited from the subjects. *Feist Publ'ns*, 499 U.S. at 346-47; *Mazer v. Stein*, 347 U.S. 201, 208 n.5 (1954); *Burrows-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884). In some cases, the contrived positioning of a subject has been protected, *see, e.g.*, *Burrow-Giles*, 111 U.S. at 60, but in other cases, poses have not been considered to be copyrightable elements because they are inherent in the subject matter or are otherwise unorginal. *See, e.g.*, *Gentieu v. Tony Stone Images/ Chicago, Inc.*, 255 F. Supp. 2d 838, 847 (N.D. Ill. 2003) (finding that photographer could not establish infringement claim because the poses and images flowed necessarily from the subject matter of naked babies and therefore were not original).

Defendants rely on *Gentieu* to argue that the pose of the sniper team in the Bryant photo

is not a protectible element of the image and therefore must be dissected out and disregarded for the copyrightability analysis. In *Gentieu*, the photographer urged copyright protection in the image of naked babies against a white background. *Gentieu*, 255 F. Supp. 2d at 844. There, the court found that a baby's smile or a baby putting its arms up was inseparable from the unprotectible idea of a baby photograph. *Id.* The court concluded that such poses are "standard" reactions found naturally in babies and therefore cannot be monopolized by the copyright holder. *Id.* at 849. Because a naked baby smiling or holding its arms up can be expressed only in a limited number of ways, the scope of copyright protection is necessarily narrower. *Id.* at 849-50.

In this regard, defendants appear to rely on what has come to be known as the *scènes à faire* doctrine, though defendants do not use that term. Under this doctrine, "incidents, characters, or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic" are not protectible by copyright. *Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1012 (7th Cir. 2005) (internal quotation marks and citation omitted); *see also, e.g., Reece v. Island Treasures Art Gallery, Inc.,* ___ F. Supp. 2d ___, No. 06-00489 JMS/LEK, 2006 WL 3804685, at *8 (D. Haw. Dec. 22, 2006) (applying the doctrine to photographs).

As defendants argue and as Bryant acknowledges, Bryant cannot claim copyright protection in the idea or concept of his subject matter, a two-person sniper team in Ghillie suits, in the prone position, sighting a target. Indeed, that particular standard "pose" is precluded from copyright protection under the *scènes à faire* doctrine. Bryant contends, however, that he is claiming protection only of his expression of that idea. He argues that the Urtis photo uses all

13

the relevant components from the Bryant photo – subject matter, composition, camera angle, lighting, and perspective – and essentially duplicates most, if not all, the compositional elements contained in that photo.

In contrast to the stark background and composition in *Gentieu*, Bryant's composition has some original elements, based on his choice of angle, perspective, lighting, and the expression of the subjects.[4] These choices constitute original elements. None of the particular compositional elements of the Bryant photo as it is expressed necessarily flows from, nor is required by, the idea of capturing a sniper team in prone position dressed in Ghillie suits. In other words, a wide range of possibilities are available to a photographer when choosing to depict a sniper team in that position. Indeed, both Bryant and Urtis have submitted several photos taken by Urtis depicting sniper teams from different angles and perspectives. *See* Pl. Ex. G.

Urtis also appears to argue that the composition and other elements of Bryant's photograph are not protectible because they are similar to earlier graphic and photographic depictions of snipers. "Some material is unprotectible because it is in the public domain, which means that it 'is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work.'" *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2d Cir. 1992)). It is unclear whether evidence of the plaintiff's access to work in the public domain and substantial

---

[4] Urtis appears to argue that any copyrightable elements were the creation not of Bryant but of Daniel Salcedo, a graphic designer who worked as Mach 1, Inc.'s creative director. Salcedo allegedly modified Bryant's photograph of the sniper team in various respects prior to its publication by Mach 1, Inc. On the present record, however, the respective roles of Bryant and Salcedo are genuinely disputed, making summary judgment on this basis inappropriate.

14

similarity between the plaintiff's work and the protected work gives rise to an inference that the plaintiff copied from unprotected work. *See id.* at 269-70. But even assuming that to be the case, Urtis' argument fails at the threshold: he has provided no evidence of Bryant's access to these earlier, public domain works.

Absent proof of copying, Bryant is entitled to copyright protection for his independently produced work "despite its identical nature to a prior work, because it is independent creation, and not novelty that is required." *Id.* at 270 (citing 1 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, § 2.01[A], at 2-9 (2001); *Feist Publ'ns,* 499 U.S. at 345). Urtis is not entitled to summary judgment based on the fact that allegedly similar depictions of sniper teams existed prior to Bryant's photograph.

   b.   **Copying**

Having determined that Bryant's photo has protectible elements, the Court moves on to whether Bryant can prove the second element of copyright infringement: copying by the defendants of the constituent elements of the work that are original. *Feist Publ'ns*, 499 U.S. at 361. In this regard, the key question is whether defendants copied or directed Urtis to copy the sniper image captured in the Bryant photo. Direct evidence of copying is typically unavailable, but "copyright infringement may be inferred where 'the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *Wildlife Express,* 18 F.3d at 508 (quoting *Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). Proof of these elements gives rise to an inference of copying that defendants can rebut by showing that they created the allegedly infringing work independently. *Susan Wakeen*, 272 F.3d at 450. Bryant cannot prevail, however, if the similarities between the works

are so minor that they do not suggest copying. *See Wildlife Express*, 18 F.3d at 508; M. Nimmer & D. Nimmer, 3 NIMMER ON COPYRIGHT, § 12.10[B][3] at 189 (2006) (explaining that if plaintiff establishes an inference of copying, then "[a] motion alleging lack of substantial similarity should be granted only if . . . the court determines that any similarity between the works is insubstantial.").

Bryant's evidence raises a reasonable inference that defendants had access to his work. Mach 1, LLC and Gordon do not suggest otherwise. Proof of access can be established by demonstrating that the creators of the allegedly infringing work had the "opportunity to view the protected item." *See Wildlife Express*, 18 F.3d at 508 n.5. Gordon concedes that he had access to Bryant's photo and that he made the decision to replace the Bryant photo in the Patience layout when Mach 1, LLC was running low on stock. *See* Pl. Ex. D (Gordon Dep. 107-08). As to Urtis, Bryant offered evidence that Urtis also had access to the Bryant photo based on the fact that both artists' photography appeared in the same coffee table book, *Eagle Eyes*, produced by Mach 1, Inc. *See* Pl. Ex. A(2); *see also* Urtis Mot. at 17-18 (Salcedo declaration); Pl. Ex. C. Urtis explains that he created his photograph at a 2003 photo session supervised by the Commander of the United States Army Sniper School. He does not, however, contest his access to the Bryant photo, nor does he offer evidence to show that the photo was created independently.[5] As a result, Urtis has not offered sufficient evidence to show the absence of a genuine issue of fact regarding his access to the Bryant photo.

---

[5] Urtis offers a declaration by Daniel Salcedo to support his motion. But Salcedo explains that Urtis was chosen as the contract photographer to create images that Gordon had requested, including a replacement for the Patience layout. Urtis Mot. at 17-18 (Salcedo declaration). Salcedo's declaration does not establish for purposes of the present motion that the Urtis photo was created independently.

The Court's next step is to decide whether there is a genuine issue of fact as to the photographs' substantial similarity and decide if defendants "used [their] access to copy." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997). Substantial similarity is determined by asking "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Wildlife Express*, 18 F.3d at 509, (quoting *Atari*, 672 F.2d at 614). This test requires a side-by-side comparison of the works. *Id.* at 506 n.1, 510. The test is rooted in a decision authored by Judge Learned Hand more than forty-five years ago. Judge Hand wrote that two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (quoted in *Wildlife Express*, 18 F.3d at 509). With respect to photography, copyright infringement has been found "'where the [accused] photographer in choosing the subject matter, camera angle, lighting, etc., copies and attempts to duplicate all of such elements as contained in a prior photograph.'" *Wallace Computer Serv. v. Adams Business Forms*, 837 F. Supp. 1413, 1417 (N.D. Ill. 1993) (quoting 1 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT, § 2.08[E] at 2-126.4 (1991)).

Defendants rely on expert witnesses to explain the alleged dissimilarity between the Bryant and Urtis photos. Specifically, Mach 1, LLC and Gordon's expert, Jane Kinne, explains that the main difference between the photographs is that Bryant's is a tighter close-up and Urtis' incorporates blue sky, clouds, and trees in the background. *See* Gordon Ex. E. Jason Kostal, Urtis' expert, explains that the two snipers employ different positioning. *See* Urtis Mot. at 5-7.

Defendants contend that even to the untrained eye, these differences obviate any substantial similarity.

Bryant, however, urges the Court to review the substantial similarity element not through the eyes of an expert witness but through the eyes of an ordinary observer.  Based on the Seventh Circuit's repeated reliance on the "ordinary observer" test, the Court agrees that it must apply that test.  *See Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 372 F.3d 913, 913 (7th Cir. 2004); *Susan Wakeen*, 272 F.3d at 451; *Wildlife Express*, 18 F.3d at 509; *Atari*, 672 F.2d at 614.  At this stage, the Court does not make a finding of fact.  Rather, as to defendants' motions, the Court decides whether, as a matter of law, a reasonable jury could find that the defendants had access to Bryant's work and that the two works are substantially similar.  Conversely, for Bryant's motion, the Court determines whether a reasonable jury could find the works are not substantially similar.

Both photos are of the same subject matter and were taken from the same angle, perspective, and with the same scene and terrain.  Though there are differences between the two photos, the Court cannot say, as a matter of law, that an ordinary observer would detect the differences without setting out to find them.  *See Peter Pan Fabrics*, 274 F.2d at 489.  Instead, the Court determines that an ordinary observer could "regard their aesthetic appeal as the same." *Id.*  Viewing the two photos side-by-side, the Court finds that an ordinary observer, and a reasonable jury, could conclude that the two works are substantially similar with regard to the copyrightable elements.  On the other hand, a reasonable jury could reach the opposite conclusion.  In other words, neither side is entitled to summary judgment.

**Conclusion**

The Court grants in part and denies in part defendants Mach 1, LLC and Gordon's motion for summary judgment as described above [docket no. 68]. The Court denies defendant Urtis' motion for summary judgment [docket no. 45] and plaintiff's cross-motion for summary judgment [docket no. 76]. The case is set for a preliminary pretrial conference on March 2, 2007 at 9:00 a.m., in Judge Kennelly's chambers (Room 2188). Trial counsel for all represented parties must attend, and defendant Urtis, who has chosen to represent himself, must attend the conference in person. *See* FED. R. CIV. P. 16(c) (court may direct parties to appear at pretrial conference). Failure by any party or counsel to comply with this requirement may lead to the imposition of a sanction. At the conference, all parties should be prepared to discuss the anticipated scope and length of the trial, as well as the possibility of settlement.

                                                                                                       _____
                                                                                                       MATTHEW F. KENNELLY
                                                                                                       United States District Judge

Date:   February 8, 2007